IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFREDO GOMEZ,

    Plaintiff,                    No. 2:11-cv-0649 LKK DAD P

    vs.

MIKE McDONALD et al.,         <u>ORDER AND</u>

    Defendants.           <u>FINDINGS AND RECOMMENDATIONS</u>

                              /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion to dismiss brought on behalf of defendants Davey, Domondan, Gower, Sanders, and Van Leer.[1] Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on an amended complaint against defendants Davey, Domondan, Gower, Sanders, and Van Leer. Therein, plaintiff alleges that on October 6, 2009, defendants placed him in a Single Cell Unit/Special Purpose Segregation Unit ("SCU/SPSU")

---

[1] Defendants had filed a motion for an extension of time to file and serve their responsive pleading. Good cause appearing, the court will grant defendants' motion nunc pro tunc, and defendants' motion to dismiss is deemed timely.

and retained him there for eight months because they believed he was a member of the 2-5 disruptive group. While segregated, plaintiff alleges that defendants refused to inform him of any disciplinary charges being brought against him or of their reasons for segregating him and did not provide him with an informal non-adversary hearing to allow him to present his views. Plaintiff also alleges that during this time defendants denied him outdoor exercise, forced him to stay in a cell in which the temperature averaged only 35 degrees, and refused to provide him with personal hygiene necessities. Plaintiff alleges that on May 25, 2010, defendants asked him to sign a document stating that he had no intention of participating in any 2-5 activities. Plaintiff signed the document, and two days later, he returned to the general population at the institution where he was incarcerated. (Am. Compl. Attach. at 6-32.)

On July 31, 2012, the court found that plaintiff's amended complaint appeared to state cognizable claims against defendants Davey, Domondan, Gower, Sanders, and Van Leer. Specifically, the court found that plaintiff's amended complaint appeared to state a cognizable claim against those defendants for denial of plaintiff's right to due process under the Fourteenth Amendment in connection their alleged involvement with his placement and retention in an SCU/SPSU. The court also found that plaintiff's amended complaint appeared to state a cognizable claim against defendants Davey, Gower, and Van Leer for cruel and unusual punishment under the Eighth Amendment for their alleged involvement in denying plaintiff outdoor exercise, placing him in a cold cell, and refusing to provide him with personal hygiene items. (See Order filed July 31, 2012 (Doc. No. 9).)

**ANALYSIS**

In the pending motion, defense counsel moves to dismiss plaintiff's amended complaint on the following grounds: (1) plaintiff's complaint fails to state a claim because his allegations do not show a causal connection between the defendants' conduct and plaintiff's placement and retention in administrative segregation; (2) plaintiff has no constitutional or federal statutory right not to be placed in administrative segregation; (3) defendants are entitled

to qualified immunity with respect to plaintiff's due process claim; and (4) plaintiff failed to exhaust his administrative remedies prior to filing suit as required. The court will address each of these arguments in turn.

I. Motion to Dismiss for Failure to State a Claim

       First, the court will address defense counsel's contention that plaintiff's complaint fails to state a cognizable due process claim. A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

       In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

       In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

1  However, the court's liberal interpretation of a pro se complaint may not supply essential
2  elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d
3  266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

4  In the pending motion to dismiss, defense counsel argues that plaintiff's complaint
5  fails to state a claim because his allegations do not identify each defendant's specific role in his
6  placement and retention in administrative segregation. In this regard, counsel argues that
7  plaintiff's allegations do not show a causal connection between defendants' conduct and
8  plaintiff's alleged due process violations. (Defs.' Mot. to Dismiss (Doc. 18) at 7-11.)

9  The court finds defense counsel's argument unpersuasive. In the attachment to
10  plaintiff's form complaint, in the "Facts" section, he alleges in great detail how officers arrived at
11  his cell, escorted him to the dining hall, and ultimately placed and retained him in an SCU/SPSU
12  for the next eight months. (Am. Compl. Attach. 8-10.) Plaintiff then describes the multitude of
13  substandard conditions he experienced in the SCU/SPSU relative to other forms of segregated
14  confinement. (Id. at 11-13.) For example, plaintiff alleges that he did not receive any outdoor
15  exercise for the eight months he was housed in the SCU/SPSU. (Id. at 15.) Then, in the "Legal
16  Claims" section, plaintiff links each defendant to his placement and/or retention in the
17  SCU/SPSU. (Id. at 24-28.) Specifically, in his Fourteenth Amendment causes of action, plaintiff
18  claims that defendants Van Leer, Davey, and Gower personally placed and/or used their authority
19  to direct other officers to place him in an SCU/SPSU without any initiating procedures that
20  would have informed him of any disciplinary charges being brought against him and provided
21  him with an informal non-adversary hearing to allow him to present his views. (Id.) Plaintiff
22  also claims that defendants Sanders and Domondan, the correctional counselor defendants, knew
23  that he was not receiving periodic reviews of his retention in the SCU/SPSU but did nothing to
24  ensure that he received those reviews as required. (Id. at 25-28.)

25  On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately
26  prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it

4

1  may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not
2  the test.  See Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).  In this case, the court finds
3  that, liberally construed, plaintiff's complaint alleges facts establishing an adequate causal
4  connections between the defendants' conduct and plaintiff's alleged due process violations so as
5  to plausibly suggest that he is entitled to relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
6  ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
7  draw the reasonable inference that the defendant is liable for the misconduct alleged."); Hebbe v.
8  Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to construe *pro se* filings liberally when
9  evaluating them under Iqbal."); al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009) ("'Asking
10 for plausible grounds to infer' the existence of a claim for relief 'does not impose a probability
11 requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable
12 expectation that discovery will reveal evidence' to prove that claim."), reversed on other grounds
13 by Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074 (2011); Bretz v. Kelman, 773 F.2d 1026,
14 1027 n.1 (9th Cir. 1985) (courts "have an obligation where the petitioner is pro se, particularly in
15 civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any
16 doubt.").  See also Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986), abrogated on other
17 grounds by Sandin v. Conner, 515 U.S. 472, 481-84 (1995) (when prison officials need to
18 segregate a prisoner for administrative reasons due process requires them to hold an informal
19 non-adversary hearing, inform the prisoner of the charges against him or their reasons for
20 considering segregation, allow the prisoner to present his views, and conduct periodic reviews of
21 his placement).

22        Here, if plaintiff proves his allegations to be true, he has a reasonable opportunity
23 to prevail on the merits of this action.  Accordingly, defendants' motion to dismiss plaintiff's
24 complaint for failure to state a claim should be denied.
25 /////
26 /////

Case 2:11-cv-00649-KJM-CKD   Document 28   Filed 07/23/13   Page 6 of 13

1   II. <u>Motion to Dismiss Because Plaintiff has No Right to Not be Placed in Ad-Seg.</u>

The court next turns to defense counsel's contention that plaintiff has no constitutional or federal statutory right not to be placed in administrative segregation. In this regard, counsel contends that plaintiff's mere placement in administrative segregation on October 6, 2009, cannot support a claim under § 1983. (Defs.' Mot. to Dismiss at 11.)

Again, the court finds defense counsel's argument unpersuasive. To prevail on a due process claim, plaintiff must show that he had a liberty interest in being free from being placed in an SCU/SPSU. See <u>Sandin</u>, 515 U.S. at 482. Under <u>Sandin</u>, a prisoner possesses such a liberty interest when a change in confinement imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>Id.</u> at 484; <u>Resnick v. Hayes</u>, 213 F.3d 443, 448 (9th Cir. 2000). In analyzing whether a change in confinement rises to the level of an atypical and significant hardship, the court should examine three factors: (1) whether the segregation at issue was essentially the same as other forms of segregation or "mirrored those conditions imposed upon inmates in administrative segregation and protective custody"; (2) the duration of the segregation at issue, the degree of restraint imposed, and whether plaintiff suffered a "major disruption" in his environment; and (3) whether the state action would affect the length or duration of plaintiff's sentence. <u>Resnick</u>, 213 F.3d at 448; <u>Ramirez v. Galaza</u>, 334 F.3d 850, 861 (9th Cir. 2003).

Defense counsel is correct that typically, an inmate's placement and retention in administrative segregation does not implicate a protected liberty interest. See <u>Resnick</u>, 213 F.3d at 449 (pre-sentencing prisoner had no liberty interest in being free from administrative segregation); <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence."). However, according to the allegations of plaintiff's complaint defendants did not merely place plaintiff in administrative segregation as defense counsel suggests. Defendants placed plaintiff in an SCU/SPSU. In his amended complaint, plaintiff has alleged at great length how the conditions in

6

1  an SCU/SPSU differed from conditions in the general population, administrative segregation, the
2  behavior management unit, disciplinary detention, and the security housing unit.  (Am. Compl.
3  (Doc. No. 8) at 15-19.)  Perhaps most significantly, plaintiff alleges that he did not receive any
4  outdoor exercise for eight months while retained in the SCU/SPSU.  (Id. at 15.)  In contrast,
5  inmates in administrative segregation are allowed a minimum of one hour of outdoor exercise per
6  day for five days a week.  (Id. at 17.)

7         Construing plaintiff's allegations in the light most favorable to him, and accepting
8  his allegations as true, plaintiff has alleged the basis of a due process claim.  See Jackson v.
9  Carey, 353 F.3d 750, 755-56 (9th Cir. 2002) (prisoner alleged material differences in
10 confinement, and whether his conditions constituted an atypical and significant hardship was an
11 inquiry better suited for summary judgment); see also Riley v. Dunn, No. CV 09-8850-JFW
12 (MLG), 2011 WL 4940855 at *6 (C.D. Cal. Oct. 4, 2011) (denying motion to dismiss for failure
13 to state a due process claim because plaintiff adequately alleged a significant and atypical
14 hardship when he was denied outdoor exercise for four months and was forced to sleep on the
15 floor with rodents); Young v. Smalls, Civil No. 09-2545 DMS (JMA), 2010 WL 1526370 at *7
16 (S.D. Cal. Apr. 15, 2010) (for screening purposes a prisoner demonstrated a cognizable liberty
17 interest when he alleged he was denied outdoor exercise for nine months).

18        Accordingly, defendants' motion to dismiss plaintiff's complaint on the grounds
19 that he has no constitutional or federal statutory right not to be placed in administrative
20 segregation should be denied.

21 III.  Motion to Dismiss Based on the Affirmative Defense of Qualified Immunity

22        The court next turns to defense counsel's argument that the defendants are entitled
23 to qualified immunity.  In defense counsel's view, because the defendants did not violate
24 plaintiff's constitutional rights all of them are entitled to qualified immunity with respect to
25 plaintiff's due process claims.  (Defs.' Mot. to Dismiss at 13-14.)  Once more, the court finds
26 defense counsel's argument unpersuasive.

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

The United States Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 555 U.S.236-242.

"A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" al-Kidd, 131 S. Ct. at 2083 (quoting Anderson v. Creighton, 483 U.S. 635 (1987)). In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. See also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular case. Saucier, 533 U.S. at 201.

/////

Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812.

As discussed above, in his amended complaint plaintiff alleges that defendants placed and retained him in an SCU/SPSU, which imposed an atypical and significant hardship on him, without any initiating procedures or periodic reviews of his retention there. Viewing plaintiff's allegations in the light most favorable to the him, defendants' conduct violated plaintiff's constitutional rights. See Sandin, 515 U.S. at 483-84; Toussaint, 801 F.2d at 1100-01.[2]

For the reasons set forth above, defendants' motion to dismiss based on the affirmative defense of qualified immunity should be denied.

IV.  Motion to Dismiss for Failure to Exhaust Administrative Remedies

Finally, the court will address defense counsel's argument that plaintiff failed to exhaust his administrative remedies prior to filing suit. By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The United States Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures.

---

[2] In the motion to dismiss now pending before the court defense counsel does not address the "clearly established" prong of the qualified immunity analysis. Accordingly, the court declines at this time to delve into whether plaintiff's due process rights at issue here were so clearly defined that every reasonable official would have known that what he was doing violated plaintiff's constitutional rights.

See Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See id. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'").

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most such inmate appeals progress through three levels of review. See id. § 3084.7. The third level of review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense. See Jones, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003). The defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. That burden, however, is "very low." Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The defendants need only show the existence of an inmate grievance procedure that plaintiff did not use. Id. (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5

1  (9th Cir. 1996) and Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005)).

2        A prisoner may be excused from complying with the PLRA's exhaustion
3  requirement if he establishes that the existing administrative remedies were effectively made
4  unavailable to him. Albino, 697 F.3d at 1031. For example, where prison officials improperly
5  screen out inmate grievances, they render administrative remedies effectively unavailable to the
6  prisoner. See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). In such a case, "the inmate
7  cannot pursue the necessary sequence of appeals . . . ." Id. See also Nunez v. Duncan, 591 F.3d
8  1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was precluded
9  from exhausting administrative remedies by a warden's mistaken instruction to him that a
10 particular unavailable document was needed for him to pursue his inmate appeal).

11       If the district court concludes that the prisoner has not exhausted administrative
12 remedies and is not excused from doing so, "the proper remedy is dismissal of the claim without
13 prejudice." Wyatt, 315 F.3d at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir.
14 2005). On the other hand, "if a complaint contains both good and bad claims, the court proceeds
15 with the good and leaves the bad." Jones, 549 U.S. at 221.

16       In this case, the court finds that plaintiff properly exhausted his administrative
17 remedies both with respect to his due process and cruel and unusual punishment claims brought
18 against the defendants in this civil action. Specifically, both parties acknowledge that plaintiff
19 and his fellow inmates filed a group appeal (HDSP-B-10-00102) and pursued the appeal through
20 the third and final level of review. (Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 22), Ex H &
21 Defs.' Reply (Doc. No. 25) at 6.) In that group inmate appeal, plaintiff and his fellow inmates
22 complained that they had not received written notice, oversight of their segregation, Institutional
23 Classification Committee hearings, oversight by a Classification Staff Representative, an
24 assigned Investigative Employee, or staff assistance. Prison officials treated the appeal as a
25 group appeal and denied plaintiff and his fellow inmates administrative relief. (Pl.'s Opp'n to
26 Defs.' Mot. to Dismiss (Doc. No. 22), Ex. H.) In defendants' reply, defense counsel concedes

that this group appeal exhausts plaintiff's due process claims against defendants. (Defs.' Reply (Doc. No. 25) at 6.)

However, defense counsel maintains that plaintiff did not cite the denial of outdoor exercise and lack of personal hygiene items in the group inmate appeal, so these claims remain unexhausted. (Id. at 6.) The court disagrees. In the group appeal, plaintiff and his fellow inmates complained about their conditions of confinement and not receiving the same rights and privileges as inmates housed in the regular administrative segregation unit. Specifically, the inmates expressly complained that they were not receiving any exercise outside of their cells as well as commissary privileges, access to regular library services, social services, counseling, religious guidance and recreation, and phone calls. (Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 22), Ex. H.) Moreover, even though plaintiff and his fellow inmates did not expressly mention lack of personal hygiene items, it is well established that a prisoner is not required to allege every fact necessary to state or prove a legal claim in his administrative appeal. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Rather, the primary purpose of an administrative appeal is merely "to notify the prison of a problem." Id. at 1120. Here, plaintiff and his fellow inmates provided prison officials more than a fair opportunity to respond to their claims that they had not received proper procedural safeguards prior to being placed in the SCU/SPSU and that the conditions in the SCU/SPSU fell far below those in the regular administrative segregation. Under these circumstances, the court finds that plaintiff's group appeal satisfied the notice requirement and served to properly exhaust plaintiff's Fourteenth Amendment and Eighth Amendment claims against defendants prior to filing suit as required. Id. at 1121 (a prisoner must "provide enough information . . . to allow prison officials to take appropriate responsive measures.").

As noted above, the defendants bear the burden of raising and proving the affirmative defense of failure to exhaust administrative remedies. See Jones, 549 U.S. 216; Wyatt, 315 F.3d at 1117-19. Defendants have not carried that burden in this instance.

Accordingly, defendants' motion to dismiss based on plaintiff's alleged failure to exhaust his administrative remedies prior to filing suit should be denied.

**CONCLUSION**

IT IS HEREBY ORDERED that:

1. Defendants' motion for an extension of time to file a responsive pleading (Doc. No. 13) is granted nunc pro tunc; and

2. Defendants' motion to dismiss is deemed timely.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (Doc. No. 18) be denied; and

2. Defendants be directed to file an answer in response to plaintiff's Fourteenth Amendment and Eighth Amendment claims within thirty days of any order adopting these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 22, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
gome0649.57

13